Peter E. Perkowski (SBN 199491)
peter@perkowskilegal.com
PERKOWSKI LEGAL, PC
515 S. Flower Street
Suite 1800
Los Angeles, California 90071
Telephone: (213) 340-5796

Attorneys for Plaintiff
BACKGRID USA, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BACKGRID USA, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> CRAVEONLINE MEDIA, LLC, EVOLVE MEDIA, LLC, and EVOLVE MEDIA HOLDINGS, LLC, <br><br> *Defendants*. | Case No.: 2:22-cv-9246 <br><br> **COMPLAINT** <br><br> *Jury Trial Demanded* |

Plaintiff BackGrid USA, Inc. alleges as follows:

1. This is an action for copyright infringement brought by plaintiff, the holder of all copyrights to the photographs described below, against all defendants for uses of plaintiff's photographs without authorization or permission.

## JURISDICTION

2. This action arises under the Copyright Act of 1976, Title 17 U.S.C. § 101 et seq. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question), § 1338 (copyright).

## PARTIES

3. Plaintiff BackGrid is a corporation organized and existing under the laws of the State of California with its principal place of business in Redondo Beach, California.

4. BackGrid is a global premier celebrity news and photo agency that provides the world's news outlets with real-time content from the top photographers.

5. BackGrid also maintains a library of photographs on a diverse range of subjects including celebrities, music, sports, fashion, and royalty. BackGrid licenses its photographs to leading magazines, newspapers, and editorial clients, throughout the world.

6. BackGrid conducts business as a syndicator of photos and photo features of popular content. The business model is predicated on licensing the use of work to many different licensees, each of which pays a fee to publish.

7. According to documents on file with the California Secretary of State, CraveOnline is an entity organized and existing under the laws of the State of California with its principal place of business in this judicial district.

8. CraveOnline owns and operates the website Mandatory, accessible at the URL www.mandatory.com, and all its pages, according to the Terms of Use Agreement page at that website.

9. CraveOnline also owns and operates the website SuperHeroHype, accessible at the URL www.superherohype.com, and all its pages, according to the Terms of Use Agreement page at that website.

10. On information and belief, CraveOnline also owns and operates the Instagram account @superherohype_com.

11. According to documents on file with the California Secretary of State, defendant Evolve Media Holdings, LLC ("Evolve Holdings") is an entity organized and existing under the laws of the State of California with its principal place of business in this judicial district.

12. Evolve Holdings owns and operates the website ComingSoon.Net, accessible at the URL www.comingsoon.net, and all its pages, according to the Terms and Conditions page at that website.

13. On information and belief, Evolve Holdings owns and operates the Instagram account @comingsoonnet.

14. According to documents on file with the California Secretary of State, defendant Evolve Media, LLC ("Evolve Media") is an entity organized and existing under the laws of the State of California with its principal place of business in this judicial district.

15. Evolve Media is a publisher of digital enthusiast destinations for men and women. According to Evolve Media, it "offers premium and engaging content to its readers, while offering marketers the tools needed to execute custom, content-led marketing solutions" that reach Evolve Media's large audience—claimed to be 78 million people globally *each month*.

16. Evolve Media's website, www.evolvemediallc.com, contains a list labeled "Our Brands," and that list includes Comingsoon.net, SuperHeroHype, and Mandatory.

**PERSONAL JURISDICTION AND VENUE**

17. The Court has personal jurisdiction over CraveOnline because it is a California company, and it has its principal place of business in this judicial district.

18. The Court has personal jurisdiction over Evolve Holdings because it is a California company, and it has its principal place of business in this judicial district.

19. The Court has personal jurisdiction over Evolve Media because it is a California company, and it has its principal place of business in this judicial district.

20. Venue in this judicial district is proper under 28 U.S.C. § 1400(a).

## BACKGROUND FACTS

21. In the marketplace, celebrity photos carry tremendous value. BackGrid has licensed individual images of celebrities to major content outlets for sometimes tens of thousands of dollars. Plaintiff's business is to provide such images, on exclusive and non-exclusive terms, to major media publications. Celebrity content, celebrity gossip, and celebrity photos are among the most valued content that generates and drives traffic to websites.

22. Defendants here have driven traffic to their websites in part by the presence of sought-after and searched-for celebrity images—including, as set forth below, images that BackGrid owns. All this traffic translates to significant advertising revenue. That is, content websites like defendants' effectively monetize the content on their websites by securing eyeballs, which translates to ad revenue. Violating plaintiff's copyright by using its photographic images without authorization is part of defendants' business strategy.

### *The Copyrighted Photographs*

23. BackGrid is the owner and exclusive copyright holder of photographic images (the "Images") as follows:

    a. BackGrid Image 1 depicts a maskless Bruce Willis in a convenience store. BackGrid Image 1 was registered to plaintiff with the U.S. Copyright Office as Registration No. VA 2-243-513 (eff. Mar. 16, 2021), in compliance with the Copyright Act.

    b. BackGrid Image 2 depicts actor Vincent D'Onofrio on an exterior set in his role as the Marvel Kingpin character. BackGrid Image 2 was

registered to plaintiff with the U.S. Copyright Office as Registration No. VA 2-316-732 (eff. Aug. 18, 2022), in compliance with the Copyright Act.

  c. BackGrid Image 3 depicts actor Vincent D'Onofrio on an exterior set in his role as the Marvel Kingpin character. BackGrid Image 3 was registered to plaintiff with the U.S. Copyright Office as Registration No. VA 2-316-737 (eff. Aug. 18, 2022), in compliance with the Copyright Act.

  d. BackGrid Images 4 through 7 depict actors Dominique Thorne and Anthony Ramos on the set of the film "Ironheart." BackGrid Images 4 through 7 were registered to plaintiff with the U.S. Copyright Office as Registration No. VA 2-316-727 (eff. Aug. 18, 2022), in compliance with the Copyright Act.

  e. BackGrid Images 8 through 14 depict actor Xolo Maridueña on the exterior set of the film "Blue Beatle." BackGrid Images 8 through 14 were registered to plaintiff with the U.S. Copyright Office as Registration No. VA 2-317-141 (eff. Aug. 22, 2022), in compliance with the Copyright Act.

  f. BackGrid Image 15 and 16 depict actress Dakota Johnson in a red trenchcoat next to a yellow taxicab on the exterior set of the film "Madame Web." BackGrid Images 15 and 16 were registered to plaintiff with the U.S. Copyright Office as Registration No. VA 2-325-363 (eff. Oct. 21, 2022), in compliance with the Copyright Act.

  g. BackGrid Image 17 through 19 depict actress Dakota Johnson in a red trenchcoat on the exterior set of the film "Madame Web." BackGrid Images 17 through 20 were registered to plaintiff with the U.S. Copyright Office as Registration No. VA 2-325-364 (eff. Oct. 21, 2022), in compliance with the Copyright Act.

### *Defendants' Infringements*

24. BackGrid never licensed the Images to defendants. Nevertheless, defendants used the Images without authorization or permission to do so, and without paying a license fee, as follows:

25. Defendant CraveOnline or its agent copied BackGrid Image 1 and displayed it on its Mandatory website on or about January 26, 2021.

26. BackGrid discovered defendant CraveOnline's infringement of BackGrid Image 1 on October 29, 2021.

27. Defendant Evolve Holdings or its agent copied BackGrid Images 2 and 3 and displayed them on Instagram on August 10, 2022, via its account @comingsoonnet.

28. BackGrid discovered defendant Evolve Holdings's infringement of BackGrid Images 2 and 3 on August 13, 2022.

29. Defendant Evolve Holdings or its agent copied BackGrid Images 4 through 7 and displayed them on Instagram on August 9, 2022, via its account @comingsoonnet.

30. BackGrid discovered defendant Evolve Holdings's infringement of BackGrid Images 4 through 7 on August 13, 2022.

31. Defendant CraveOnline or its agent copied BackGrid Images 8 through 14 and displayed them on Instagram on May 28, 2022, via its account @superherohype_com.

32. BackGrid discovered defendant CraveOnline's infringement of BackGrid Images 8 through 14 from August 20 to 22, 2022.

33. Defendant CraveOnline or its agent copied BackGrid Images 15 through 19 and displayed them on Instagram on July 28, 2022, via its account @superherohype_com.

34. BackGrid discovered defendant CraveOnline's infringement of BackGrid Images 15 through 17 on August 19, 2022.

35. BackGrid discovered defendant CraveOnline's infringement of BackGrid Images 18 and 19 on October 21, 2022.

### Harm to BackGrid

36. The Images are creative, distinctive, and—as evidenced by defendants' use and misappropriation of them—valuable. Because of their quality, visual appeal, and celebrity subject matter, BackGrid stood to gain revenue from licensing the Images.

37. But defendants' unauthorized use of the Images harmed the market for them. Defendants' web and Instagram posts made the Images immediately available to its hundreds of thousands of followers and to the public, including consumers of entertainment and fashion news who would otherwise be interested in viewing licensed versions of the Images in the magazines, newspapers, and online publications that are BackGrid customers.

38. In addition, defendants' unauthorized uses of the Images are commercial in nature. Defendants use their websites and Instagram feeds for the purposes of promotion—specifically, to promote brand awareness of its business interests and to attract and drive users to its website where defendant derives revenue from advertisements. On information and belief, defendant knew that because of the Images' depictions of popular celebrities, users would be attracted to view the Images and thus more likely to frequent its website.

39. Defendants' unauthorized use of the Images also harms BackGrid's business model. Syndicated licensing to multiple licensees at or around the time of the events depicted in the images is critical to BackGrid's maximizing its revenue, followed by continued syndicated licenses over time. This is especially true for images that are sold as "exclusive" or "premium exclusive": such images command higher license fees because they depict celebrities or situations that are in high demand, or they are the only photographs available for such celebrities or situations (because no other photographers were present), or both. When infringers routinely

and widely disseminate images that legitimate licensees have paid to use, the result is downward pressure on BackGrid's license fees. BackGrid's customers—among them, media companies who pay large license fees for celebrity visual content—are less likely to purchase licenses, or will demand to pay less, knowing that the images they pay for will be widely and simultaneously available due to rampant infringement.

40. The economic effect of defendants' infringement is magnified for at least two reasons. First, defendants are competitors of BackGrid's media and news outlet customers. Thus, defendants' infringements doesn't just deprive BackGrid of a license fee, it also send a message (to paying customers and potential ones) that infringement is a legitimate alternative to purchasing a license.

41. Second, economic harm multiplies when the infringement occurs at or around the time of initial publications, when BackGrid's customers would still be attracting views because of the "newness" and popularity of the Images has not worn off. That is what occurred here.

*Facts That Support a Finding of Willful Infringement*

42. As entertainment and media companies, defendants operate in an industry in which copyrights are prevalent and well-understood. Based on that knowledge, each of the defendants was aware of the importance of copyright protection and knew that it needed to have but did not have permission to use the Images, and/or it acted recklessly by posting the Images without determining the right to do so.

43. More specifically, defendants are aware of the importance of copyright protection. This is demonstrated on defendants' websites themselves, each of which contains a copyright notice, for example as shown below.



44. Further, defendants' awareness of the importance of copyright protection as it pertains to the rights of third parties is demonstrated by the Terms of Use that they publish or link to on each of their websites. The Terms of Use contains language that warns users of the importance of third parties' intellectual property rights, including copyright. The ComingSoon.net, SuperHeroHype.com, and Mandatory Terms of Use/Service all read as follows:

> You agree that any User Content that you post does not and will not violate third-party rights of any kind, including without limitation any Intellectual Property Rights (as defined below) … . … For the purposes of this Agreement, "Intellectual Property Rights" means all patent rights, copyright rights, … and other intellectual property rights and moral rights as may now exist or hereafter come into existence … under the laws of any state, country, territory or other jurisdiction.

45. Moreover, each of the defendants has previously been credibly accused of copyright infringement, including in legal proceedings instituted in federal courts, based on alleged conduct identical or substantially similar to the conduct alleged in this Complaint. At least one of those cases resulted in a judgment. Despite these previous accusations, which put defendants on notice that conduct like that alleged in this Complaint is likely to violate the U.S. Copyright laws, defendants continued to engage in that same conduct.

46. In addition, at the time of the infringements, defendants knew of BackGrid and BackGrid's business model of licensing copyrighted photographs for editorial use. Specifically, beginning in 2019 and ending some time before the infringements here, defendant Evolve Media was previously a customer of BackGrid, having signed a Subscription Licensing Agreement by which it agreed to pay license fees to use photographs and video owned and controlled by BackGrid on various websites and social media platforms—among them, ComingSoon.net and

SuperHeroHype.com. The infringements alleged in this Complaint occurred after Evolve Media's Subscription Licensing Agreement with BackGrid expired.

47. Despite their awareness of plaintiff's rights under the Copyright laws, defendants acted with at least reckless disregard for, or willful blindness to, those rights. On information and belief, defendant did not pay a license fee, inquire as to the availability of a license, do any work to confirm that the Photographs were authorized to be copied and displayed, or clear the Photographs for use on defendants' websites.

### CLAIM ONE
### For Copyright Infringement Against CraveOnline and Evolve Holdings

48. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth here.

49. Plaintiffs are the authors and or/copyright owners of the protected Images named above in this Complaint.

50. Defendants CraveOnline and Evolve Holdings have reproduced, displayed, or otherwise copied the Images without plaintiff's authorization or license.

51. The foregoing acts of defendants CraveOnline and Evolve Holdings infringed upon the exclusive rights granted to copyright owners under 17 U.S.C. § 106 to display, reproduce, and distribute their work to the public. Such actions and conduct constitute copyright infringement in violation of 17 U.S.C. §§ 501 et seq.

52. Plaintiff has complied in all respects with 17 U.S.C §§ 101 et seq. and secured and registered the exclusive rights and privileges in and to the copyrights of the above-referenced works in accordance with 17 U.S.C § 408.

53. Plaintiff suffered damages as a result of the unauthorized uses of the Images by defendants CraveOnline and Evolve Holdings.

54. Having timely registered his copyright in the Images, plaintiff is entitled to elect statutory damages under 17 U.S.C. § 412 and § 504(c), in an amount of not

less than $750 or more than $30,000 per infringement of each work registered before the infringements.

55. On information and belief, the actions of CraveOnline and Evolve Holdings were intentional or in reckless disregard of plaintiff's copyrights, and such actions support an award of enhanced statutory damages for willful infringement under the Copyright Act, 17 U.S.C. § 504(c)(2), in the sum of up to $150,000 per infringed work.

56. In the alternative, plaintiff is entitled to recovery of its actual damages and defendants' profits attributable to the infringement of the Images, under 17 U.S.C. § 504(b).

57. Within the time permitted by law, plaintiff will make their election between actual damages and profit disgorgement, or statutory damages.

58. Plaintiff is also entitled to a discretionary award of attorney fees under 17 U.S.C. § 412 and § 505.

**CLAIM TWO**

**For Vicarious or Contributory Copyright Infringement Against Evolve Media**

59. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth here.

60. On information and belief, defendant Evolve Media contributed to, induced, or assisted infringements by direct infringers CraveOnline and Evolve Holdings. CraveOnline and Evolve Holdings infringed while acting under defendant Evolve Media's direction and control and/or using technology, facilities, and support services provided by Evolve Media.

61. Defendant Evolve Media had, or should have had, knowledge of the infringements of CraveOnline and Evolve Holdings. Further, Evolve Media holds itself out to be the "publisher" of online destination websites that include ComingSoon.net, SuperHeroHype, and Mandatory, suggesting that Evolve Media controls the content that appears on those websites and Instagram accounts or,

alternatively, has the right and ability to supervise the infringing activity that occurred on those websites and Instagram accounts.

62. Defendant Evolve Media obtained some financial benefit from the infringement of plaintiff's rights in the Images because Evolve Media has monetized the websites and Instagram accounts, and because the Images were a draw for viewers regardless of the revenue received from any specific use. Accordingly, Evolve Media had an incentive to permit and even encourage infringement by the CraveOnline and Evolve Holdings.

63. As a direct and proximate result of said acts of secondary infringement, plaintiff has suffered substantial damages in an amount to be proven at trial.

64. Plaintiff is entitled to actual damages and disgorgement of direct and indirect profits realized by defendant Evolve Media in an amount to be proven at trial or, at its election, statutory damages.

65. Within the time permitted by law, plaintiff will make its election between actual damages and profit disgorgement, or statutory damages.

66. Plaintiff is also entitled to a discretionary award of attorney fees under 17 U.S.C. § 412 and § 505.

## CLAIM THREE

### For Vicarious or Contributory Copyright Infringement

### Against CraveOnline and Evolve Media

67. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth here.

68. If either or both defendants CraveOnline and Evolve Media are not liable as direct infringers of the Images (for example, because they use a third-party contractor to manage the content on their websites and social media accounts), they are secondarily liable for the infringements directly committed by those third parties presently unknown (the "Direct Infringers").

69. Defendants CraveOnline and Evolve Media contributed to, induced, or assisted infringements by the Direct Infringers. Those Direct Infringers infringed while acting under the direction and control of, and/or using technology, facilities, and support services provided by, defendants CraveOnline and Evolve Media.

70. Defendants CraveOnline and Evolve Media had, or should have had, knowledge of the infringements of the Direct Infringers. Further, the Images were published on the websites and Instagram accounts of CraveOnline and Evolve Media and therefore they were aware, or should have been aware, of that fact. As the owner of the websites and Instagram accounts CraveOnline and Evolve Media, defendant knew or should have known that it did not have licenses to use Images.

71. Defendants CraveOnline and Evolve Media had the right and ability to supervise the infringing activity that all the Direct Infringers committed because the infringements occurred on their websites and Instagram accounts.

72. Defendants CraveOnline and Evolve Media obtained some financial benefit from the infringement of plaintiff's rights in the Images because they have monetized their websites and Instagram accounts, and because the Images were a draw for viewers regardless of the revenue received from any specific use. Accordingly, defendants CraveOnline and Evolve Media had an incentive to permit and even encourage infringement by the Direct Infringers.

73. As a direct and proximate result of said acts of secondary infringement, plaintiff has suffered substantial damages in an amount to be proven at trial.

74. Plaintiff is entitled to actual damages and disgorgement of direct and indirect profits realized by defendants CraveOnline and Evolve Media in an amount to be proven at trial or, at its election, statutory damages.

75. Within the time permitted by law, plaintiff will make their election between actual damages and profit disgorgement, or statutory damages.

76. Plaintiff is also entitled to a discretionary award of attorney fees under 17 U.S.C. § 412 and § 505.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff requests the following:

A. For a preliminary and permanent injunction against defendants and anyone working in concert with them from further copying or displaying the Images;

B. For an order requiring defendants to account to plaintiff for their profits and any damages sustained by plaintiff arising from the acts of infringement;

C. As permitted under 17 U.S.C. § 503, for impoundment of all copies of the Images used in violation of plaintiff's copyrights—including digital copies or any other means by which they could be used again by defendants without plaintiff's authorization—as well as all related records and documents;

D. For actual damages and all profits derived from the unauthorized use of the Images or, where applicable and at plaintiff's election, statutory damages;

E. For an award of pre-judgment interest as allowed by law;

F. For reasonable attorney fees;

G. For court costs, expert witness fees, and all other costs authorized under law;

H. For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury of all issues permitted by law.

Dated: December 20, 2022      Respectfully submitted,

**PERKOWSKI LEGAL, PC**

By:   /s/ Peter Perkowski

Peter E. Perkowski

Attorneys for Plaintiff
BACKGRID USA, INC.